T.C. Memo. 2004-237



UNITED STATES TAX COURT



THEODORE W. BANIS, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 13155-02L.              Filed October 14, 2004.



     P timely petitioned this Court to review R's
determination to proceed with collection of assessments
against P for 1993-96.  After concessions by both
parties, only 1996 remains in issue.  P alleges that
his liability for 1996 was paid by the trustee in his
bankruptcy proceeding and that respondent specifically
acknowledges the satisfaction of his 1996 liability in
a "closing letter".  R alleges (1) the trustee's
payments to R were applied, in their entirety, to 1990-
94, (2) the "closing letter" concerns a proposed
additional amount of tax and related adjustments, which
were dropped on the basis of information provided by P,
and (3) the assessments relating to P's self-determined
tax liability for 1996 remain unpaid.

     Held:  On the basis of the evidence, the
determination by R's Appeals officer to proceed with
collection of the assessments against P for 1996 is
sustained.

Theodore W. Banis, Jr., pro se.

Ann M. Welhaf, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge: Pursuant to section 6330(d), petitioner seeks review of respondent's determination to proceed with collection of income taxes and additions to tax for calendar years 1993 through 1996. During the trial, the parties made concessions with respect to 1993-95. Respondent conceded that collection is improper for 1993. Petitioner conceded, and respondent agreed, that collection for 1994 is proper after application by respondent of two credits to petitioner's 1994 account in the amounts of $600 and $157.38. Petitioner also conceded that collection is proper for 1995. The only issue remaining in dispute is respondent's determination to proceed with collection for 1996.

Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Some facts are stipulated and are so found. The stipulation and the supplemental stipulation of facts, with accompanying exhibits, are incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Accokeek, Maryland.

On May 29, 2001, respondent mailed to petitioner a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of levy) covering 1994-96. On June 25, 2001, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing (request for hearing), for 1994-96. On July 1, 2002, a face-to-face hearing was held involving petitioner and Jacqueline Sansbury, an Internal Revenue Service (IRS) Appeals officer with the IRS Appeals Office in Baltimore, Maryland (Appeals Officer Sansbury). On July 25, 2002, respondent mailed to petitioner a Notice of Determination Concerning Collection Action(s) under Section 6320 and/or 6330 (the notice of determination) sustaining the proposed collection action against petitioner for all years. Petitioner's petition and amended petition challenging respondent's determination were filed August 12 and October 15, 2002, respectively.

Facts Pertaining to 1996

On August 11, 1997, petitioner filed his 1996 individual income tax return, Form 1040A, U.S. Individual Income Tax Return, showing total tax due of $12,245, total tax withheld of $2,726, and a balance due of $9,519, which petitioner failed to remit

with his return.  Transcripts[1] of petitioner's account for 1996
show that, on August 11, 1997, respondent assessed a tax
liability of $12,245, gave a credit for the $2,726 of withheld
taxes, assessed an addition to tax for failure to pay of $190,
and assessed interest of $281.  The total assessment of $9,990
was listed as the "Assessed Balance" for 1996 in the notice of
levy covering that year.

In a notice of proposed changes (Form CP 2000) dated March
11, 1998, (the CP 2000 letter), respondent's Philadelphia Service
Center advised petitioner of proposed changes to petitioner's
1996 return that would result in additional tax, penalty, and
interest due in the sum of $11,482.  The proposed changes
consisted of (1) a $24,912 net increase in taxable income:
$25,496 of "nonemployee compensation" reported on Form 1099-MISC,
Miscellaneous Income, ($25,336 reported by Nationwide Life
Insurance Co. (Nationwide) and $160 by Ford Motor Credit) less a
$584 deduction for 50 percent of a proposed self-employment tax,
(2) self-employment tax, (3) an accuracy related penalty, and (4)
interest from April 15, 1997 to March 26, 1998.

---

[1] Each of the transcripts in evidence is derived from
current account information in respondent's master file.  In
general, transcripts are obtained by entering various command
codes (e.g., MFTRA, TXMODA) into respondent's integrated data
retrieval system (IDRS) in order to obtain a particular
transcript.  IDRS is essentially the interface between
respondent's employees and respondent's various computer systems.
See Crow v. Commissioner, T.C. Memo. 2002-149 n.6.

On March 13, 1998, petitioner faxed to respondent (1) a copy of a 1994 order of a United States Bankruptcy Court (the bankruptcy court order), which, in effect, required that payments due from Nationwide to petitioner be made directly to the trustee in bankruptcy of petitioner and Mrs. Banis (the trustee) and (2) a letter dated March 14, 1997, from the trustee to the Philadelphia Service Center explaining that an earlier proposal to assess a negligence penalty against petitioner based upon a Form 1099-MISC was in error because petitioner did not receive the payment, which, pursuant to the 1994 order, was made directly to the trustee for disbursement to creditors.

On April 3, 1998, the Philadelphia Service Center sent a "closing letter" (Form CP 2005) to petitioner pertaining to 1996 (the closing letter), which provides, in pertinent part, as follows:

CLOSING LETTER

Thank you for giving us more information about the income we recently wrote to you about.  We are pleased to tell you that, with your help, we were able to clear up the differences between your records and your payers' records.  If you sent us a payment based on our proposed changes, we will refund it to you if you owe no other taxes or have no other debts the law requires us to collect.

If you have already received a notice of deficiency, you may disregard it.  You won't need to file a petition with the United States Tax Court to reconsider the tax you owe.  If you have already filed a petition, the Office of the District Counsel will contact you on the final closing of this case.

In her notice of determination sustaining the proposed collection action for 1996, Appeals Officer Sansbury stated, in pertinent part, as follows:

> For tax year ending 12/31/96, I reviewed IDRS transcripts and reviewed the taxpayer's original return and determined Mr. Banis owes the tax due. I explained to Mr. Banis the closing letter he received from the Internal Revenue Service for * * * [1996] was in response to him providing documentation that the income reported was incorrect. However, the tax that is due for * * * [1996] is correct.

## OPINION

### I. Introduction

If any person liable for Federal tax liability neglects or refuses to make payment within 10 days of notice and demand, the Secretary is authorized to collect the tax by levy on that person's property. Sec. 6331(a). As a general rule, at least 30 days before taking such action, the Secretary must provide the person with a written final notice of intent to levy that describes, among other things, the administrative appeals available to the person. Sec. 6331(d). Upon request, the person is entitled to an administrative review hearing before respondent's Appeals Office (Appeals Office hearing). Sec. 6330(b)(1). If dissatisfied with the Appeals Office determination, the person may seek judicial review in the Tax Court or a Federal District Court, as appropriate. Sec. 6330(d)(1).

Section 6330(c)(1) requires that the Appeals officer, at the Appeals Office hearing, obtain verification "that the requirements of any applicable law or administrative procedure have been met." Section 6330(c)(2)(A) prescribes the relevant matters that a person may raise at an Appeals Office hearing, including spousal defenses, the appropriateness of respondent's proposed collection action, and possible alternative means of collection. A taxpayer may contest the existence or amount of the underlying tax liability at an Appeals Office hearing only if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B). An Appeals Office determination under section 6330(c)(2)(A) is reviewed for abuse of discretion whereas a determination regarding the underlying tax liability under section 6330(c)(2)(B) is subject to de novo review. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

At issue in this case is respondent's right to collect petitioner's self-determined tax liability for 1996 (i.e., the amount set forth as petitioner's tax liability on his 1996 return) plus related interest and an addition to tax. In Montgomery v. Commissioner, 122 T.C. 1 (2004), we held that a taxpayer's challenge to his self-determined tax liability at an

Appeals Office hearing constitutes a permissible challenge to the underlying tax liability under section 6330(c)(2)(B).  Unlike the taxpayer in Montgomery, however, petitioner is not disputing the accuracy of his self-determined tax liability.  Rather, he alleges that the liability has been paid by the trustee.  We have not specifically decided whether such a claim involves (1) a determination under section 6330(c)(2)(B) relating to the existence or amount of the underlying tax liability entitled to de novo review by this Court, or (2) a section 6330(c)(2)(A) determination relating to an "unpaid tax" subject to review for abuse of discretion.  In Washington v. Commissioner, 120 T.C. 114 (2003), we considered an analogous issue (whether the Appeals officer was correct in determining that the taxpayer's self-determined tax liabilities had not been discharged in bankruptcy), but in sustaining the Appeals officer's determination to proceed with collection in Washington we did not specifically address the appropriate standard of review.

In this case, all of the evidence contained in the trial record (including copies of IRS transcripts covering petitioner's 1990-96 taxable years, which were introduced into evidence during the trial) was available to Appeals Officer Sansbury in making her determination.  For the reasons discussed in Section II, infra, our review of that evidence causes us to sustain Appeals Officer Sansbury's determination to proceed with collection

whether we apply an abuse of discretion or a de novo standard of review. Therefore, as in Washington v. Commissioner, supra, we decline to explicitly adopt a standard of review. Cf. Swanson v. Commissioner, 121 T.C. 111, 119 (2003) (in sustaining the Appeals officer's determination that unpaid tax liabilities were not discharged in bankruptcy and that collection should proceed, we applied an abuse of discretion standard of review under circumstances in which the petitioner had received a notice of deficiency thereby precluding him from challenging the existence or amount of the underlying tax liability under section 6330(c)(2)(B)).

## II. The Trustee Did Not Discharge Petitioner's 1996 Liabilities

Petitioner objects to Appeals Officer Sansbury's determination solely on the basis that (1) his tax and tax-related (i.e., interest and addition-to-tax) liabilities for 1996 were discharged out of the payments made by the trustee to the IRS and (2) respondent specifically acknowledges the discharge of those liabilities in the closing letter. Petitioner's position is set forth in his request for hearing, in pertinent part, as follows:

> I do not agree that I owe the taxes identified on the Notice of Intent to Levy for tax year * * * 1996. The adjustments made to my tax return * * * [for 1996 are] incorrect. The non-employee compensation identified by IRS for * * * [1996] was not paid to me. The money was paid to the trustee of my Chapter 11 Bankruptcy (case #93-5-5237-JS). The money was part of over $170,000 collected by the trustee from money owed

> me by Nationwide Insurance Company.  Pursuant to a court order dated May 9, 1994, Nationwide Insurance Company was directed to pay directly to the trustee all money owed me from my Agents' Security Compensation Plan and Deferred Incentive Credits Plan [.] Monthly payments from Nationwide went directly to the trustee from 1994 through 1998 for disbursement by the trustee under the bankruptcy.  All taxes owed should have been paid by the Trustee.  The trustee's final report shows that $69,336.26 was paid to the IRS for taxes.  Thus, the amounts you are showing as overdue should be a part of this $69,336.26.
>
> I have attempted to correct this matter many times in the past few years.  I have received a "Closing Letter" dated April 3, 1998, indicating that all 1996 taxes have been paid (copy enclosed) and do not understand why I continue to receive notices that I still owe unpaid taxes for that year.

Appeals Officer Sansbury reviewed IDRS transcripts of petitioner's account for 1990-96 and determined that $69,234 had been credited to petitioner's account for 1990-94.  The 1990-94 transcripts confirm the payment of $69,234 under the transaction code 670, accompanied, in all but one case, by the description "subsequent payment undesignated bankruptcy" and accompanied, in that one case, by the description "subsequent payment".  No payments by the trustee are reflected in the transcript of petitioner's account for 1996.  In fact, the only payment reflected in the transcript for 1996 is $2,726 for withheld taxes.  The Form 4340, Certificate of Assessments and Payments, for 1996 also reflects that there was no payment for that year other than a credit for $2,726 of withheld taxes.

We have repeatedly held that a Form 4340 or a computer printout of a taxpayer's transcript of account, absent a showing of irregularity, provides sufficient verification of the taxpayer's outstanding liability (and that a valid assessment has been made) to satisfy the requirements of section 6330(c)(1). See, e.g., Davis v. Commissioner, 115 T.C. 35, 40-41 (2000); Roberts v. Commissioner, T.C. Memo. 2004-100; Tornichio v. Commissioner, T.C. Memo. 2002-291; Howard v. Commissioner, T.C. Memo. 2002-81. In light of petitioner's failure to demonstrate any irregularity in the preparation of the transcripts of petitioner's account for 1990-1996, we find that those transcripts accurately reflect the assessed liabilities and payments thereof for those years. See Davis v. Commissioner, supra at 41; Tornichio v. Commissioner, supra.[2]

We also agree with Appeals Officer Sansbury that the closing letter concerns the proposed additions to income and related adjustments for 1996, not the assessments based upon petitioner's self-determined tax liability for that year. The close proximity in time between (1) petitioner's March 13, 1998, fax of the

---

[2] There is no explanation in the record of the discrepancy between the $69,234 credited by respondent to petitioner's account for 1990-94 and the $69,336 alleged by petitioner (on the basis of the trustee's final report, which is not in evidence) to have been "paid to the IRS for taxes." The $102 difference is inconsequential, and if that additional amount was paid to the IRS for a year other than 1990-94, it was not 1996, the year in issue.

bankruptcy court order and of the trustee's letter explaining that amounts paid by Nationwide directly to the trustee were erroneously included on a Form 1099-MISC issued to petitioner and (2) the closing letter, which begins "[t]hank you for giving us more information about the income we recently wrote to you about", indicates that the latter was written in response to the former. Moreover, it is clear that petitioner's March 13, 1998, fax was prompted by the CP 2000 letter from respondent's Philadelphia Service Center to petitioner, which proposed to increase petitioner's 1996 income by amounts reported on 1099-MISCs as paid to petitioner by Nationwide and Ford Motor Credit during that year. A further indication that the closing letter concerns the proposed additional tax (not petitioner's self-determined, unpaid tax) is provided by the following sentence contained therein: "If you have already received a notice of deficiency, you may disregard it." A notice of deficiency is issued in connection with an additional amount of tax, not with respect to a self-determined, unpaid tax, which is immediately assessed pursuant to section 6201(a)(1). Lastly, Appeals Officer Sansbury provided unchallenged testimony that a closing letter (CP 2005) is customarily issued in connection with a notice of proposed changes (CP-2000).

III.  <u>Conclusion</u>

Appeals Officer Sansbury's determination affirming the proposed levy action against petitioner for 1996 is sustained.

To reflect concessions and the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.